UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DASHAWN ELKERSON, | ) | |
| | ) | No. 20 CV 2897 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| SYNY LOGISTICS, INC., EDWARD | ) | |
| SINITEAN, and OVIDIU ASTALUS, | ) | |
| | ) | April 18, 2022 |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

Plaintiff alleges that Defendant transportation company SYNY Logistics, Inc. ("SYNY"), Defendant Edward Sinitean, President of SYNY, and Defendant Ovidiu Astalus, owner and CEO of SYNY, retaliated against him in violation of the Surface Transportation Assistance Act ("STAA") and Illinois Whistleblower Act ("IWA") by firing him from his work as a truck driver after he raised safety concerns. Plaintiff also alleges common law retaliatory discharge claims. Defendants move for summary judgment on all claims, as well as on their failure-to-mitigate-damages defense. For the following reasons, the motion is denied:

**Local Rule 56.1**

The court notes as a preliminary matter that Plaintiff moved to strike certain aspects of Defendants' response to Plaintiff's Rule 56.1(b)(3) statement of additional facts, contending that their response includes legal arguments and additional facts and evidence in contravention of LR 56.1(e)(2). (R. 51.) The court denied the motion but indicated that it would consider Plaintiff's arguments when ruling on the motion

for summary judgment. (R. 53.) The court does so now and agrees with Plaintiff that Defendants' response is riddled with legal arguments and improperly raises additional facts and evidence—all of which the court must disregard. (See, e.g., DRPSOAF ¶¶ 6, 8, 12-14, 16-20, 28-31, 34, 36 (reflecting legal arguments)[1]; see also id. at 12-13 & Ex. 1 (reflecting additional facts and evidence); *Trumbull v. SCI Ill. Servs., Inc.*, 575 Fed. Appx. 683, 684-85 (7th Cir. 2014) (affirming decision to disregard legal argument in response to opposing party's statement of material facts); *Cichon v. Exelon Gen. Co., LLC*, 401 F.3d 803, 809-10 (7th Cir. 2005) ("A district court does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance with [LR] 56.1, the court chooses to ignore . . . the additional facts that a litigant has proposed."); *Premier Cap. Mgmt, LLC v. Cohen*, No. 02 CV 5368, 2008 WL 4378313, *2 n.4 (N.D. Ill. March 24, 2018) (LR 56.1 "does not allow the movant to make successive filings of statements of fact to which the non-movant has no opportunity to respond").) The court now turns to the facts that are properly before it, which are undisputed unless otherwise noted.

## Background

Plaintiff is a commercial truck driver with a "Class A" commercial driver's license ("CDL"). (DSOF ¶ 1; PRSOF ¶ 1.) As such, he is subject to certain rules and regulations, including those promulgated by the Federal Motor Carrier Safety

---

[1] As used herein, "DSOF" refers to Defendants' Statement of Material Facts, R. 37; "PRSOF" refers to Plaintiff's Response to Defendants' Statement of Material Facts, R. 40; "PSOAF" refers to Plaintiff's Statement of Additional Material Facts, R. 40; and "DRPSOAF" refers to Defendants' Response to Plaintiff's Statement of Additional Facts, R. 49.

Administration.  (DSOF ¶¶ 2, 4; PRSOF ¶¶ 2, 4.)  One such regulation ("Secured

Cargo Regulation") requires knowledge of "[t]he principles and procedures for the

proper handling of cargo, including (i) Consequences of improperly secured cargo,

drivers' responsibilities, and Federal/State and local regulations; (ii) Principles of

weight distribution; and (iii) Principles and methods of cargo securement."

(349 C.F.R. § 383.111(a)(16); DSOF ¶ 3; PRSOF ¶ 3.)  Another requires a special

endorsement to transport hazardous materials.  (49 C.F.R. § 383.141; DSOF ¶ 12;

PRSOF ¶ 12.)

SYNY hired Plaintiff as a truck driver in May 2019.[2]  (DSOF ¶¶ 8, 11; PRSOF

¶¶ 8, 11; R. 40-1 at 16.)  Plaintiff's job application indicated that he held a Class A

CDL license and had worked as a driver for several other trucking companies since

---

[2] In their opening brief, Defendants argued in cursory fashion and without citation
to authority that Plaintiff was an independent contractor and that his claims are
"fatally flawed . . . based on this fact alone."  (R. 36, Defs.' Br. at 3.)  Because this
argument was undeveloped and Defendants failed to reply to Plaintiff's arguments to
the contrary in his response, the court disregards Defendants' argument.
*See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) (claims
waived where party asserting them "did not provide the district court with any basis
to decide" them and "did not respond to [opposing party's] arguments"); *see also John
K. MacIver Inst. for Pub. Pol'y, Inc. v. Evers*, 994 F.3d 602, 614 (7th Cir. 2021) ("A
party who does not sufficiently develop an issue or argument forfeits it.").  Moreover,
both the STAA and IWA apply to independent contractors.  *See* 49 U.S.C. § 31105(j)
(defining "employee" to include "independent contractor"); *see also* 740 ILCS 174/5
(defining "employee" to include an individual engaged on a "contractual basis"); *Lewis
v. Marmon Grp., LLC*, No. 11 CV 1806, 2014 WL 4357603, at *3 (N.D. Ill. Sept. 3,
2014) (construing IWA to cover independent contractors).  And although a common
law retaliatory discharge claim is available solely to employees, an individual's
classification as such is a fact-intensive inquiry that has not been made with any real
effort here.  *See New Horizons Electrs. Mktg., Inc. v. Clarion Corp. of Am.*, 561 N.E.2d
283, 285 (Ill. App. Ct. 1990); *see also Warren v. Williams*, 730 N.E.2d 512, 517 (Ill.
App. Ct. 2000).  As such, summary judgment may not be granted on this basis.

2015 but had no experience operating flatbed trailers. (R. 40-1 at 17, 19; PSOAF ¶ 3; DRPSOAF ¶ 3.) In July 2019, SYNY dispatched Plaintiff to transport cargo from Oklahoma to Utah. (DSOF ¶¶ 15, 19; PRSOF ¶¶ 15, 19.) Fellow SYNY drivers Montelle Magee and Thomas Johnson were also dispatched as a team that day to transport cargo from and to the same locations. (DSOF ¶ 15; PRSOF ¶ 15.) When Plaintiff arrived at the SYNY facility, he discovered that he would be required to secure and transport several large tanks marked with "hazardous" placards on a flatbed trailer. (PSOAF ¶¶ 5, 7; DRSOAF ¶¶ 5, 7). Plaintiff did not have an endorsement to transport hazardous materials, and although he acknowledged that he sometimes must secure cargo himself, he had no experience securing or transporting cargo on a flatbed. (DSOF ¶¶ 5, 13; PRSOF ¶¶ 5, 13; PSOAF ¶ 2; DRSOAF ¶ 2.)

The parties dispute whether there is a difference between securing cargo on a flatbed trailer and an enclosed trailer. (DSOF ¶¶ 19, 21; PRSOF ¶¶ 19, 21; PSOAF ¶ 7; DRPSOAF ¶ 7.) They also dispute whether Plaintiff's cargo was actually hazardous. Defendants Astalus and Sinitean and SYNY dispatcher Ioan "John" Chirila each testified that SYNY is not and was never in the business of transporting hazardous materials. (DSOF ¶ 14; PRSOF ¶ 14.) Defendants point to two documents for support. The first is a load confirmation that shows the subject cargo consisted of machine parts. (DSOF ¶ 16; PRSOF ¶ 16; R. 37-4.) But it is unclear whether the document was associated with Plaintiff's cargo, Magee's and Thompson's cargo, or another cargo entirely. And while Magee testified that the cargo he and Thompson

carried was the same as Plaintiff's, Plaintiff represented that his cargo did not consist

of "machine parts."[3]  (DSOF ¶ 17; PRSOF ¶¶ 16, 17; PSOAF ¶ 5; DRPSOAF ¶ 5;

R. 37-4; R. 37-2 at 32-33.)  Defendants also rely on the bill of lading for Magee's and

Thompson's cargo, which shows the cargo included "Fuel Tank containing NA 1993

Diesel Fuel, Class 3, PG III," with "0g" in the "quantity" column for the fuel tank and

an unchecked box in the "hazmat" column.  (DSOF ¶ 18; PRSOF ¶ 18; R. 37-13.)

However, the bill of lading for Plaintiff's cargo is not part of the summary judgment

record.

Plaintiff called Chirila shortly after arriving at the facility to express his

concerns that someone could be injured if he secured the cargo to a flatbed trailer or

transported hazardous materials.  (PSOAF ¶ 8.)  For his part, Chirila maintains that

Plaintiff simply told him he was having trouble securing the load.  (DRSOAF ¶ 8.)

But both Astalus and Sinitean testified that Plaintiff complained the cargo consisted

of hazardous materials, (PRSOF ¶ 31; PSOAF ¶ 21), and that SYNY investigated that

possibility by contacting the broker and reviewing the paperwork,[4] (see R. 37-14 at

62-63; R. 37-15 at 30, 37).  Astalus also testified that he directed Chirila to ask Magee

and Johnson to help Plaintiff secure his cargo in response to Plaintiff's concerns.

(R. 37-14 at 51.)  Chirila did so and explained at his deposition that: (1) not every

---

[3]  Plaintiff also testified that while typically a load confirmation would include a description of the cargo and other "details," this document does not. (PSOAF ¶ 5; DRPSOAF ¶ 5; R. 37-2 at 32-33.)

[4]  To be sure, Astalus himself testified that he was concerned that "probably the broker lied to us" about the contents of the cargo. (R. 37-14 at 62-63.)

CDL driver knows how to properly secure cargo; (2) Magee and Johnson had more experience working with SYNY; and (3) his practice was to ask more experienced drivers to help those who are less experienced. (DSOF ¶¶ 19, 20; PRSOF ¶¶ 19, 20; PSOAF ¶¶ 9, 10; DRSOAF ¶¶ 9, 10.)

Chirila also directed Plaintiff to go out and buy chains and binders to secure his and Magee's and Johnson's cargoes. (PSOAF ¶ 11; DRSOAF ¶ 11.) Plaintiff first went to Home Depot, but there were not enough chains and binders available. When Plaintiff called Chirila and updated him, Chirila directed him to buy what he could at Home Depot and buy the rest from Lowe's. (PSOAF ¶ 12; DRSOAF ¶ 12.) The chains and binders at Lowe's were different than those Plaintiff purchased at Home Depot, but Chirila instructed Plaintiff to buy them anyway, which he did before returning to the facility. (PSOAF ¶ 13; DRSOAF ¶ 13.)

Plaintiff then observed Magee and Johnson searching YouTube videos for instructions before securing their cargo. (PRSOF ¶ 20; PSOAF ¶ 14; DRSOAF ¶ 14.) They also attempted to secure Plaintiff's cargo before leaving to make their own delivery. (DSOF ¶ 24; PRSOF ¶ 24; PSOAF ¶ 14; DRSOAF ¶ 14.) Plaintiff called Chirila again expressing his safety concerns about the cargo, but Chirila insisted that he tighten the chains himself and complete the delivery. (PSOAF ¶ 15; DRSOAF ¶ 15.) After this exchange, Plaintiff asked others at the facility whether they believed his cargo was properly secured. They were unsure, so Plaintiff drove his truck a short distance toward the front of the facility to test it but pulled over when the load shifted. (DSOF ¶¶ 25-26. PRSOF ¶¶ 25-26; PSOAF ¶ 16; DRSOAF ¶ 16.) Plaintiff texted

6

Chirila that the "load is moving," and "load is moving what you want me to do."
(PSOAF ¶ 17; DRSOAF ¶ 17.) Chirila instructed Plaintiff to "tight [sic] the chains."
(Id.) Plaintiff asked others at the facility to help, but they declined, explaining that
they did not want to be responsible. (PSOAF ¶ 18; DRSOAF ¶ 18.) Plaintiff then
texted Chirila, "They [sic] canceling the load." (PSOAF ¶ 19; DRSOAF ¶ 19.) When
Chirila asked why, Plaintiff told him that the "load was moving." (Id.) Chirila texted
back "So? Did you tighten the chains?" and "Make I [sic] work No Excuses." (DSOF
¶ 27; PRSOF ¶ 27; PSOAF ¶ 19; DRSOAF ¶ 19.) But Plaintiff did not proceed, (DSOF
¶ 29; PRSOF ¶ 29), never intended to make the delivery given the safety risks and
moved the truck slightly only because SYNY was "pushing [him] to do the load" and
he "knew that it would shift," (R. 37-2 at 44-46; DSOF ¶ 28; PRSOF ¶ 28; PSOAF
¶ 20; DRSOAF ¶ 20). Three days later, and at Astalus's direction, Sinitean presented
Plaintiff with a termination notice indicating that he was "Fired" for "not following
dispatchers [sic] instructions." (R. 37-14 at 51-52; R. 46 at 2.)

　　　　Shortly thereafter, Plaintiff worked landscaping for about two weeks and
earned about $1,000. (PSOAF ¶ 30; DRSOAF ¶ 30.) Plaintiff then temporarily
relocated to New York, where he worked security part-time from August 2019 to
November 2019, earning approximately $500 per week. He did not look for full-time
work during this time. (DSOF ¶ 34; PRSOF ¶ 34.) He then worked intermittently as
a truck driver from November 2019 to March 2020, earning about $1,200 per week,
(PSOAF ¶ 31; DRSOAF ¶ 31), and applied for at least seven other truck driver
positions between August 2019 and August 2020, (PSOAF ¶¶ 32-33; DRSOAF ¶¶ 32-

33).  At his June 2021 deposition, Plaintiff reported that he: (1) worked construction

and landscaping for a friend twice a week, earning between $5,000 and $10,000 since

starting in September 2020; (2) drove for DoorDash delivery when he needed extra

money, earning about $1,500 since he started in February 2021; and (3) worked

intermittently as a truck driver for a temporary staffing agency.  (DSOF ¶ 37; PRSOF

¶ 37; PSOAF ¶ 36.)  Shortly after his deposition Plaintiff began full-time work with

Prestige Pavers Power Washing LLC earning approximately $2,500 per month.

(PSOAF ¶ 35; DRSOAF ¶ 35.)   In addition to this testimony, Plaintiff produced

records reflecting certain earnings from DoorDash and the temporary agency but did

not produce any tax returns or bank statements reflecting other income earned.

(DSOF ¶ 38; PRSOF ¶ 38.)

Meanwhile, Plaintiff filed an OSHA complaint in September 2019 alleging that

Defendants fired him in retaliation for complaining about safety issues with driving

an improperly secured, hazardous load without the appropriate endorsement in

violation of STAA.[5]   (DSOF ¶ 32; PRSOF ¶ 32; R. 40-1 at 77-82.)   OSHA later

suspended its investigation when Plaintiff filed this lawsuit asserting the same

claims, along with claims under the IWA and for retaliatory discharge based on the

same theories.  (R. 40-1 at 84-85.)  Defendants now move for summary judgment on

---

[5]  Plaintiff's OSHA complaint also alleges that he was fired because Defendants
believed he would file such a complaint.  (See R. 40-1 at 77-82.)  But there is no
evidence of any conversation between Plaintiff and any representative from SYNY
about his intent to do so.  (DSOF ¶ 33; PRSOF ¶ 33.)

each such claim, and on their affirmative defense that Plaintiff failed to mitigate his damages.

## Analysis

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). But to overcome summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury cannot return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Under this standard, the court cannot grant Defendants' summary judgment motion.

## A.    Surface Transportation Assistance Act

The STAA was enacted to "encourage employees to complain about safety violations when they see them," and as such makes it illegal for employers to retaliate against employees for engaging in certain protected conduct. *Gaines v. K-Five Constr. Corp.*, 742 F.3d 256, 263 (7th Cir. 2014). A plaintiff in an STAA retaliation case may proceed under either the direct or indirect method of proof. Here, Plaintiff elects to

proceed under the indirect, burden-shifting method that was initially developed under federal antidiscrimination laws. That method first requires a plaintiff to establish a *prima face* case that: (1) he engaged in activity protected by STAA; (2) he was the subject of an adverse employment action; and (3) there was a causal link between his protected activity and adverse employment action. *Bettner v. Admin. Rev. Bd.*, 539 F.3d 613, 621 (7th Cir. 2008). Thereafter, the burden shifts to the defendant to demonstrate by clear and convincing evidence that it would have fired the plaintiff even if he had not engaged in protected activity. *Gaines*, 742 F.3d at 263. If the defendant is successful, the plaintiff must then produce evidence that this explanation is pretextual. *Id.* Defendants contend here that summary judgment is proper on Plaintiff's STAA claim because he did not engage in protected activity and would have been terminated even if he had.

An employee engages in STAA-protected activity when he "refuse[s] to operate a vehicle because [he] has a reasonable apprehension of serious injury to [himself] or the public because of the vehicle's hazardous safety or security condition." 49 U.S.C. § 31105(a)(1)(B)(ii). Whether an individual's apprehension was reasonable is analyzed from the viewpoint of a reasonable person under the circumstances. *See* 49 U.S.C. § 31105(a)(2). To qualify for protection, the employee must first have sought and been refused correction of the safety issue. *Id.*

Defendants attack this element of Plaintiff's *prima face* case on two fronts, arguing first that Plaintiff's purported apprehension concerning his cargo was not reasonable because no evidence—other than his own testimony—supports a

10

reasonable belief that the cargo was hazardous or that he ever complained that the cargo was hazardous. (R. 36, Defs.' Br. at 5; R. 48, Defs.' Reply at 2, 5.) But contrary to Defendants' assertion, Plaintiff's firsthand description of the tanks bearing "hazardous" placards is sufficient to create an issue for trial, particularly when coupled with the lack of definitive evidence of what his cargo included. *See Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (holding that district court improperly failed to consider deponent's statements based on personal knowledge). Moreover, and as noted, both Sinitean and Astalus testified that Plaintiff complained that the cargo was hazardous. And importantly, Defendants do not argue that Plaintiff's fears regarding the security of his cargo were unreasonable, or that he did not seek correction of the issue.

Defendants also argue that Plaintiff did not engage in a "refusal" under STAA because he bought chains and binders to secure his cargo and then actually drove it for some distance, taking steps toward making the delivery. They also point to Plaintiff's text message to Chirila as proof that the shipper—not Plaintiff—canceled the delivery. (R. 36, Defs.' Br. at 5; R. 48, Defs.' Reply at 3, 5.) But Defendants acknowledge that Plaintiff did not deliver the cargo to its destination, and Plaintiff testified that he never intended to make the delivery and moved his truck only to test the security of the cargo. The evidence also reflects that Chirila continued to press Plaintiff to make the delivery even after Plaintiff told him the shipper had canceled the load. Accordingly, there is ample evidence from which a jury could conclude that

11

Plaintiff reasonably "refused" to transport the cargo, and summary judgment is not proper on this ground.

Defendants next contend that they would have terminated Plaintiff's contract even if he had not engaged in protected conduct, citing the Secured Cargo Regulation and Plaintiff's failure to secure the cargo himself. Summary judgment is proper on this ground only if Defendants "present[ ] unrebutted evidence that [they] would have taken the adverse employment action against the plaintiff even if [they] had no retaliatory motive." *Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005). Defendants have not done so here. Indeed, viewing the evidence in the light most favorable to Plaintiff, as this court must, a reasonable factfinder could conclude that Defendants would not have fired Plaintiff but for his protected activity. First, Plaintiff's job application shows that he did not have experience securing cargo to a flatbed trailer, but SYNY hired him anyway. Second, Chirila acknowledged in his deposition that "not everybody knows how to [secure a load] properly" even though they hold a CDL, and that his practice was to ask more experienced drivers to help less experienced drivers for that reason. Third, Astalus testified that he directed Chirila to ask Magee and Thompson to secure Plaintiff's load, and that the qualifications for SYNY drivers are that they hold a CDL, have "some experience," and are "approved by the insurance" before hire. There is no dispute that Plaintiff met these qualifications. Finally, Defendants have not offered any evidence to rebut Plaintiff's testimony that Magee and Thompson also failed to secure Plaintiff's load or that they had to search for guidance before securing their own cargo, but they still

12

work for SYNY. As such, genuine issues of material fact preclude summary judgment on Plaintiff's STAA claim.

## B.    Illinois Whistleblower Act

Defendants also seek summary judgment on Plaintiff's IWA claim, which requires Plaintiff to establish that he was retaliated against because he refused to participate in an activity that would violate a state or federal law, rule, or regulation. *See* 740 ILCS § 174/20. Defendants contend that "refusal" for purposes of the IWA means actual refusal, not merely complaining about or questioning an activity as Plaintiff has allegedly done. Defendants are correct on the law. *See Sardiga v. N. Trust Co.*, 948 N.E.2d 652, 657 (Ill. App. Ct. 2011) (holding that for purposes of IWA claim, "the plaintiff must actually refuse to participate" in offending activity). But for the reasons explained above, a reasonable factfinder could conclude that Plaintiff "refused" to transport the cargo because he felt that doing so would have been too dangerous.

Defendants argue that even if Plaintiff "refused" to participate in the transport and delivery of the cargo, he cannot establish that he would have violated a law, rule, or regulation if he had delivered the cargo, because he has no proof that the cargo was hazardous. But again, Plaintiff's, Sinitean's, and Astalus's deposition testimony makes clear that Plaintiff complained he could not transport the cargo because it was hazardous, (PSOAF ¶ 8; PRSOF ¶ 31; PSOAF ¶ 21), and Plaintiff testified that the tanks to be transported bore labels indicating they were hazardous, (PSOAF ¶¶ 5, 7; DRSOAF ¶¶ 5, 7). While Defendants point to their own assurances and the bill of

13

lading to Magee's and Thompson's cargo to suggest Plaintiff's cargo was not hazardous, a reasonable juror could conclude otherwise on this record. Furthermore, Defendants point to nothing to indicate that the court is required to take their word. In fact, at this stage, the court is instead obligated to draw all reasonable inferences in Plaintiff's favor.

Additionally, and despite Defendants' urging to the contrary, Plaintiff is not required to "prove" that the cargo was hazardous to survive their motion for summary judgment. Instead, it is sufficient to do as Plaintiff has done here—that is, to identify the law, rule, or regulation that the activity would have violated and produce evidence from which a jury could conclude that engaging in the activity would have produced such a violation. *Cf. Van Pelt v. Bona-Dent, Inc.*, No. 17 CV 1128, 2020 WL 1288977, at *5 (N.D. Ill. March 18, 2020) (granting employer summary judgment where plaintiff failed to create inference that the complained of activity would result in violation); *see also Armour v. Homer Tree Servs., Inc.*, No. 15 CV 10305, 2017 WL 4785800, at *13-14 (N.D. Ill. Oct. 24, 2017) (denying employer summary judgment where plaintiff testified that employer instructed her to violate workers' compensation law and she refused, and employer denied exchange occurred).

Defendants also argue that Plaintiff cannot rely on the secured cargo theory as the basis for his IWA claim because he did not include it as part of his complaint. (R. 48, Defs.' Reply at 8.) But Plaintiff's IWA count incorporates by reference certain introductory paragraphs to his complaint, several of which explicitly provide factual support for this theory. (See R. 1 ¶ 57 (restating and incorporating paragraphs 1-

14

48)); *see also Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 808 (7th Cir. 2014) (holding that while "new factual bases for claims or legal claims" are not permitted in response to summary judgment, a "new characterization" of existing facts is); *cf. Pine Top Receivables of Ill., LLC v. Banco de Seguros del Estado*, No. 12 CV 6357, 2016 WL 3058339, at \*10 (N.D. Ill. May 31, 2016) (holding that plaintiff's opposition to summary judgment exceeded scope of complaint because "existing factual allegations" pled were "inconsistent with the new factual allegation" in response). Accordingly, Plaintiff's IWA claim is not barred on this basis.

Finally, Defendants argue that even if Plaintiff is permitted to go forward on his secured cargo theory, any regulatory violation would have been of Plaintiff's own making because he did not know how to safely secure cargo and thus it cannot form the basis for his claim. (R. 48, Defs.' Reply at 8.) But as explained, Plaintiff has presented unrebutted evidence that his cargo was not properly secured despite the help of other SYNY drivers. And that gives rise to a reasonable inference that: (1) it was not possible to properly secure his load with the chains and binders on hand; and (2) his transporting it anyway would have violated the very same regulation. *See* 349 C.F.R. § 383.111(a)(16)(i) (requiring knowledge of the "Consequences of improperly secured cargo"). As such, Defendants' motion fails as to Plaintiff's IWA claim.

## C. Retaliatory Discharge

Defendants argue that summary judgment is proper on Plaintiff's retaliatory discharge claim. To sustain such a claim, Plaintiff must establish that he was discharged in retaliation for his activities and in violation of a clear mandate of public

15

policy. *Hinthorn v. Roland's of Bloomington, Inc.*, 519 N.E.2d 909, 911 (Ill. 1988). Defendants again argue that Plaintiff's "own allegations defeat his claims under this [theory] as with the others," because he did not know how to safely secure the cargo, and thus *he* was the safety issue, which was the reason for his termination. (R. 36, Defs.' Mot. at 9; R. 48, Defs.' Reply at 9.) Defendants also reiterate their argument that there is no evidence that the cargo was hazardous. (Id.) It is axiomatic that "[i]f [Defendants] fired [Plaintiff] because he complained about safety issues, then his termination violates a 'clear mandate of public policy.'" *Gaines*, 742 F.3d at 269. As already discussed, there is evidence from which a jury could conclude that was the case. Defendants' rationale for firing Plaintiff—that he is unable to secure cargo loads himself—is nothing more than a competing rationale at this point and, as noted, the court is required to accept factual inferences in Plaintiff's favor. Accordingly, Defendants are "not entitled to summary judgment on this issue for the same reasons [they are] not entitled to summary judgment on [Plaintiff's] STAA claim." *Id.*

### D.     Failure to Mitigate

Defendants assert that Plaintiff failed to mitigate and prove damages, and thus that a jury could not award him lost wages even if his claims survive summary judgment. But failure to mitigate is an affirmative defense as to which Defendants bear the burden of proof, and Plaintiff testified regarding his efforts to secure work and provided documentary evidence to support some earnings. As such, "the jury must determine whether [Plaintiff's] . . . efforts constituted reasonable diligence to mitigate his damages." *Jankowski v. Dean Foods Co.*, 378 F. Supp. 3d 697, 713 (N.D.

16

Ill. 2019); *see also Kasper v. Saint Mary of Nazareth Hosp.*, 135 F.3d 1170, 1176 (7th Cir. 1998) (holding that "[i]t was for the jury to decide whether to believe" plaintiff's testimony regarding mitigation efforts).

## Conclusion

For the foregoing reasons, Defendants' summary judgment motion is denied.

**ENTER:**

_____

**Young B. Kim**
**United States Magistrate Judge**

17